Filed 3/18/13  P. v. Nguyen CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANH DUOC NGUYEN,<br><br>    Defendant and Appellant. | G046378<br><br>(Super. Ct. No. 07WF1586)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William R. Froeberg, Judge.  Affirmed.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meredith White and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Anh Duoc Nguyen of five counts of attempted murder (Pen. Code, §§ 187, subd. (a), 664),[1] and one count each of shooting at an occupied motor vehicle (§ 246) and active participation in a criminal street gang (§ 186.22, subd. (a)). The jury also found true associated gang and gun use enhancements. (§§ 186.22, subd. (b)(1), 12022.5, subd. (a), 12022.53, subd. (d)). The court sentenced defendant to a prison term of 15 years to life for one attempted murder conviction, plus a consecutive term of 25 years to life for one gun use enhancement, along with concurrent sentences for the remaining attempted murder convictions and gun use enhancements. Pursuant to section 654, the court stayed execution of sentence on the remaining convictions.

On appeal defendant contends insufficient evidence supports four attempted murder convictions. We affirm the judgment.

FACTS

In March 2007, defendant and Tien Phan exchanged insulting messages via online social media. One of defendant's messages to Phan stated: "Ha, ha, I'm going to get a .45 and shoot at your pussy face. Fucking Wah Ching in the house."

On June 2, 2007, defendant and Nghia Duong were members of the Wah Ching gang. That evening, defendant and around nine other people arrived at a doughnut shop where Tien Phan and three of Phan's friends were present. Defendant's group yelled, "Wah Ching." Defendant chased Phan into the shop and kicked him, causing Phan to jump over a counter. Duong asked the people in front of the shop, "You guys got shit with us?" They replied, "No." Duong yelled, "This is Wah Ching."

---

[1] All statutory references are to the Penal Code.

2

Defendant, Duong, and several friends went to Bowling Green Park and smoked pot.  There, Duong received a phone call from someone who claimed to be from the Dragon Family gang.  The caller said he wanted to talk about the doughnut shop incident and "make sure everything [was] all right."  The caller asked Duong where he was and Duong replied he was at Bowling Green Park.

About 10 minutes later, at least three cars drove into Bowling Green Park and parked.  Around five people got out of the cars.  Someone screamed, "This is Dragon Family."

Duong felt disrespected.  He told defendant, "This is a setup.  Let's go back to my house."  Defendant said, "Go grab the gun."  Duong and defendant drove to Duong's house where they retrieved a nine-millimeter gang gun.

It was around 2:00 a.m. and dark.  At the park, the two opposing groups (around four or five people per side) waited for defendant to arrive.  Loc Tran, a friend of Tien Phan, testified the groups were there to resolve the dispute by witnessing "whoever [had] started [the fight] just go one-on-one."  Tien Phan testified he was there to "make peace."  Peter Hoang, an eventual victim, believed defendant wanted the two groups to "talk it out."

The Wah Ching group phoned defendant and told him to come talk it out and get it taken care of.  The Wah Ching group reported to the other side that defendant was coming.

Duong was driving toward the park with defendant in the passenger seat holding the gun.  Duong received a phone call from a friend at the park who said the people there wanted to talk to him.  Duong told the friend to "get out [of] there."  Duong then hung up.

At the park, the Wah Ching group, still on the phone, suddenly began walking away.  The other side sensed "something bad" was going to happen so they started running toward their parked cars.

3

Duong arrived at the park and drove very slowly toward a group of people by a tree near a parked car.  Duong drove very close to the parked car and stopped for five or six seconds.  Defendant leaned out of the passenger side, yelled, "Wah Ching" or "Wah Ching for life," and, wearing gloves, fired two or three shots at the rear window of the parked car.  Inside the parked car were Tien Phan and three of his friends.  At least one shot hit the car's window.

Defendant then raised his arm and fired shots at people on a hill at the park or running away from the area by the tree.[2]  Duong's car was about 53 feet away from Loc Tran, who hit the ground and started crawling.  Peter Hoang, running from the tree, saw the shooter (about 55 feet away) point the gun toward where Hoang was running and saw the muzzle flash come his way.  Hoang fell to the ground, having been shot in the back.

During the entire incident, defendant fired a total of five to seven shots.  A police officer found 5 nine-millimeter shell casings at the scene.

Hoang had surgery and was in the hospital for eight or nine days.  At the time of defendant's trial, Hoang continued to suffer symptoms from the shooting.


DISCUSSION

*Substantial Evidence Supports Defendant's Attempted Murder Convictions*

Defendant contends four of his five attempted murder convictions must be reversed because there is insufficient evidence he had a specific intent to kill the four persons inside the parked car.  The Attorney General counters that defendant's "act of firing five rounds from a nine millimeter handgun at a group of suspected gang rivals at

---

[2]      Duong testified defendant first shot at the people running from the tree *before* he shot at the parked car.

4

close range supports a reasonable inference that he intended to kill someone each time he fired the gun."

Under the applicable standard of review, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "'The test is whether substantial evidence supports the [conclusion of the trier of fact], not whether the evidence proves guilt beyond a reasonable doubt.'" (*People v. Crittenden* (1994) 9 Cal.4th 83, 139.) We "'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) "Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) As to the element of intent, if "'the evidence is sufficient to justify a reasonable inference that the requisite intent existed, the finding of its presence in a particular case, may not be disturbed on appeal [citations].'" (*People v. Pitts* (1990) 223 Cal.App.3d 606, 888.)

The intent required for attempted murder differs from that necessary for murder. Murder requires a mental state of *either* express malice (i.e., intent to kill) *or* implied malice (i.e., conscious disregard for life). (*People v. Stone* (2009) 46 Cal.4th 131, 139-140 (*Stone*).) For attempted murder, however, only express malice will suffice. (*Ibid.*)

But even though attempted murder requires a specific intent to kill, what is needed "'is the intent to kill *a* human being, not a *particular* human being.'" (*People v. Perez* (2010) 50 Cal.4th 222, 230 (*Perez*).) Thus, in *Stone*, our Supreme Court held that "a person who shoots into a group of people, intending to kill one of the group, but not

knowing or caring which one, can be convicted of attempted murder." (*Stone*, *supra*, 46 Cal.4th at p. 134.) "An indiscriminate would-be killer is just as culpable as one who targets a specific person." (*Id.* at p. 140.)

Furthermore, if the defendant has a specific victim in mind, "under some facts a jury could find the person *also*, concurrently, intended to kill — and thus was guilty of the attempted murder of — other, nontargeted, persons." (*Stone*, *supra*, 46 Cal.4th at p. 137.) For example, a defendant may intend to murder others within a "'kill zone'" of the target, such as by (1) placing a bomb on an airplane, thereby ensuring the death of the primary target and the other passengers, or (2) firing "'a flurry of bullets'" at a fleeing car containing a primary target and other persons. (*Ibid.*, summarizing *People v. Bland* (2002) 28 Cal.4th 313, 329-331.)[3]

In *People v. Smith* (2005) 37 Cal.4th 733, the defendant fired only one shot, yet was convicted of two counts of attempted murder. (*Id.* at p. 737.) The defendant had fired a single bullet into a slowly moving car, narrowly missing a mother and her infant son. (*Ibid.*) Our Supreme Court rejected the defendant's contention insufficient evidence showed he intended to kill the baby, and affirmed both convictions. (*Id.* at p. 736.) Evidence that the "defendant purposefully discharged a lethal firearm at the victims, both of whom were seated in the vehicle, one behind the other, with each directly in his line of fire, can support an inference that he acted with intent to kill both." (*Id.* at p. 743.)

Generally, however, the number of shots fired will equal the number of victims a defendant intends to kill. In *Perez*, *supra*, 50 Cal.4th at page 224, the defendant "fired a single bullet at a distance of 60 feet, from a car going 10 to 15 miles per hour, at a group of seven peace officers and a civilian . . . ." The defendant believed he was

---

[3] The "'concurrent intent' or 'kill zone' theory 'is not a legal doctrine requiring special jury instructions . . . .'" (*Stone*, *supra*, 46 Cal.4th at p. 137.) Whether there is a kill zone depends on "the nature and scope of the attack." (*Perez*, *supra*, 50 Cal.4th at p. 232; see also *People v. McCloud* (2012) 211 Cal.App.4th 788 [discussing the kill zone theory].)

shooting at rival gang members, but was not "targeting any particular individual when he fired at the group." (*Ibid.*) Our Supreme Court held that "a rational trier of fact could find that defendant's act of firing a single bullet at a group of eight persons from a distance of 60 feet established that he acted with intent to kill *someone* in the group he fired upon." (*Id.* at p. 230.) The evidence was thus sufficient to support *one* conviction of premeditated attempted murder of a peace officer. (*Ibid.*) But the evidence was "insufficient to sustain [the] defendant's convictions of the remaining seven counts of attempted murder" (*ibid.*), because there was no evidence the defendant (1) specifically targeted a particular individual, (2) "specifically intended to kill two or more persons with the single shot," or (3) specifically intended to kill more than one person in the group but was thwarted from firing additional shots by circumstances beyond his control (*id.* at p. 231).

Applying these principles, evidence that defendant fired at least five times into groups of people at a relatively close range — either indiscriminately at rival gang members or concurrently at Tien Phan and those in the car with him — was sufficient to support an inference he intended to kill someone each time he fired a shot. But defendant contends, based on the prosecutor's closing argument, that the People were required to prove he intended to kill five *particular* persons — specifically, Hoang (the victim shot in the back) and the four people in the parked car.

The amended information identified the attempted murder victims as John Does Nos. 1 through 5. The prosecutor in his opening statement did not identify specific victims by name, but did state that defendant "fired five shots at four individuals who were inside a car and one of the individuals that was with that group." In his closing argument, the prosecutor identified the victims as Hoang and the four occupants of the parked car. The prosecutor argued defendant tracked his target, Tien Phan, and had a concurrent intent to kill the people in the car by waiting until they all got into the car "in one nice, neat little package." The prosecutor argued there was evidence that "a bunch of

shots" or possibly three shots were fired at the car. The prosecutor argued defendant did not limit his intent to kill to Tien Phan only, because defendant shot at people outside the car who were running away.

Based on the prosecutor's identification of specific victims, defendant contends there was insufficient evidence he intended to kill *four* people in the parked car when he fired *three* shots at it. He asserts there was no evidence the victims in the car were seated in such a way that one shot could hit more than one person.

The Attorney General fails to respond to this contention. But the prosecutor's identification of particular victims cannot be ignored. Under the reasoning of *Perez*, defendant could be properly convicted of only three counts of attempted murder for firing three shots into the car, absent evidence he "specifically intended to kill two or more persons with [a] single shot," or was thwarted from firing additional shots by circumstances beyond his control, or targeted a particular victim with a concurrent intent to kill others in the kill zone. (*Perez*, *supra*, 50 Cal.4th at p. 231.) There was clearly no evidence of the first two exceptions. As to the kill zone theory, if defendant fired four times at the car, the kill zone theory might apply under the reasoning that defendant could not see which person in the car was Tien Phan and thus had to kill all four persons to ensure Phan's death. But the evidence showed defendant fired three shots at the car. There was no evidence he fired a flurry of bullets specifically at the car.

We must thus determine whether *one* of defendant's attempted murder convictions must be reversed for insufficient evidence solely because the prosecutor in his closing argument tied four of the charges to specific victims in the parked car and the evidence predominantly showed defendant fired three shots at the car.[4] As already

---

[4] Three witnesses testified defendant fired two or three shots at the car. Another witness testified the shooter started shooting at the car, at which point the witness hit the ground and bullets were "flying everywhere after that." This last testimony is not substantial evidence that defendant aimed four or more bullets at the car.

discussed, absent the prosecutor's comments, substantial evidence supports all five attempted murder convictions. The evidence overwhelmingly supports inferences that defendant (1) fired indiscriminately at rival gang members at least five times, or (2) fired concurrently at Tien Phan and others in the car at most three times, and indiscriminately at rival gang members for the necessary balance of murder attempts.

Does it matter that the jury may have followed the prosecutor's suggestion/direction that four of the victims were the occupants of the parked car? To answer this question, we will evaluate the possible impact on the jury of the prosecutor's comments, focusing on whether there is a reasonable likelihood that the jury was misled or misconstrued or misapplied the prosecutor's remarks.

The jury's verdict forms provide no evidence that the jurors misapplied the prosecutor's remarks or were misled by them. On the verdict forms, the jury found defendant guilty of attempted murder "as charged in" the information, i.e., without identifying any specific victims.

Nor was the jury bound to follow the prosecutor's theory advanced in his closing argument, which was inconsistent with the operative information: "The prosecuting attorney may discuss the facts and the law, advance any theory fairly within the evidence, and urge any conclusions deemed proper. The logic of the prosecutor's argument is for defense counsel to challenge and *for the jury ultimately to determine*." (5 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Trial, § 757, p. 1176, italics added.) Furthermore, the court instructed the jury that the attorneys' remarks in their opening statements and closing arguments were not evidence; thus, the jury knew the prosecutor's statements had limited import. "'[We] presume that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.'" (*United States v. Olano* (1993) 507 U.S. 725, 740.) In sum, although the prosecutor appears to have been confused, the jury was not.

9

Finally, any error was harmless under any standard as "it is 'clear beyond a reasonable doubt that the jury would have returned a verdict of guilty' [citation] even if the prosecutor had not made the comment at issue." (*People v. Carter* (2005) 36 Cal.4th 1215, 1267.)[5] The evidence was overwhelming.

## DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

FYBEL, ACTING P. J.

THOMPSON, J.

---

[5] Defendant does not argue he was misled to his prejudice in presenting his defense. As noted above, the charges in the operative information specified no particular victims. The evidence presented by the parties at trial did not focus on any individual victims targeted by defendant, other than Tien Phan. The People presented evidence defendant fired a total of five or more shots at the parked car *and* at people outside the car. Defendant presented evidence suggesting the shooter's identity was unclear and that someone in the Dragon Family group (rather than defendant) might have done the shooting. Defense counsel, in her closing argument, did adopt the prosecutor's identification of the victims, listing them as Hoang and the four occupants of the parked car. But defense counsel's closing argument about these persons was that these individuals never identified defendant as the shooter. The gist of her argument was that Duong (defendant's accomplice) or a Dragon Family member could have been the shooter, as opposed to defendant. She disputed the prosecutor's statement that "there was a flurry of bullets at this car," noting (1) the car had no "shot out windows" and only one hole (in the driver's door), (2) no one in the car was shot, and (3) the jury was never presented with any bullets taken out of the car.